UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

FREDKIEY HURLEY, individually,               Index No.: 15-cv-2785 (GBD)(HBP)

                    Plaintiff,

  -against-

TOZZER, LTD. d/b/a NIAGARA,

                    Defendant.

--------------------------------------------------------X


## <u>MEMORANDUM OF LAW IN SUPPORT OF</u><br><u>MOTION FOR SUMMARY JUDGMENT</u>


Steven DiSiervi, Esq. (SD-2511)
ABRAMS, GORELICK, FRIEDMAN & JA-
COBSON, LLP
Attorneys for Defendant
One Battery Park Plaza – 4th Floor
New York, New York 10004
(212) 422-1200

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF THE FACTS ...........................................................................3

III.  PROCEDURAL STATUS AND DISCOVERY ...............................................5

IV.  SUMMARY JUDGMENT STANDARDS ........................................................7

V.   ARGUMENT ........................................................................................................8

  A.  Plaintiff's Complaint Must Be Dismissed Because He Lacks Standing .....8

    **1.** Plaintiff Has Not Suffered An Injury In Fact As To Alleged
        Violations 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 .......................9

    **2.** Plaintiff Cannot Show A Real And Immediate Threat
        Of Injury ...........................................................................................12

    **3.** Alleged Violations 4, 7, 10, 12, 13 And 14 Are Moot.............................14

  B.  Plaintiff Has Not Met His Burden On The Readily
      Achievable Standard.................................................................................16

    1.  Plaintiff Does Not Identify Any Readily Achievable Method of
        Barrier Removal at the Entrance.......................................... ...18

    2.  Plaintiff Does Not Identify Any Readily Achievable Method
        of Barrier Removal at Bar Counter...................................................19

    3.  Plaintiff Does Not Identify Any Readily Achievable Method
        of Barrier Removal at Interior Steps.....................................20

    4.  Plaintiff Does Not Identify Any Readily Achievable Method
        of Barrier Removal in Men's Restroom...............................20

VI.  CONCLUSION...............................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Access 4 All v. G&T Consulting Co.*, 2008 U.S. Dist. LEXIS 30594
(S.D.N.Y. 2008) .......................................................................................................... 13
*Access 4 All Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F.Supp.2d 160
(S.D.N.Y. 2006) .......................................................................................................... 13
*Allen v. Wright*, 468 U.S. 737 (1984) ...................................................................... 12
*Already, LLC v. Nike, Inc.,* 133 S. Ct. 721 (2013) .................................................. 14
*Bacon*, 2015 U.S. Dist. LEXIS 35184 ................................................................ 14, 15
*Beard v. Banks*, 548 U.S. 521 (2006) ......................................................................... 7
*Bernstein,* 2015 U.S. Dist. LEXIS 18810 ............................................................. 9, 11
*Beyer v. Cnty. Of Nassau*, 524 F.3d 160 (2d Cir. 2008) ........................................... 7
*Celotex Corp v. Catrett*, 477 U.S. 317 (1986) ........................................................... 7
*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...................................... 12, 13, 14
*Ctr. For Biological Diversity v. Lueck*, 417 F.3d 532 (6th Cir. 2005)....................... 8
*Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146 (3d Cir. 1999) ........................... 8
*Gathright-Dietrich v. Atlanta Landmarks, Inc.,* 435 F.Supp.2d 1217 (N.D. Ga. 2005) ....... 17
*Golden Pac. Bancorp.v. F.D.I.C.*, 375 F.3d 196 (2d Cir. 2004).................................. 7
*Harris v. Stonecrest Care Auto Center,* 472 F.Supp.2d 1208 (S.D. Cal. 2007)............... 8, 12
*Harty v. Greenwich Hosp. Group LLC,* 536 Fed. Appx. 154 (2d Cir. 2013) ........................ 9
*Hubbard v. 7-Eleven, Inc.,* 433 F.Supp.2d 1134 (S.D. Cal. 2006) ...................... 9, 12
*Kohler v. In- N-Out Burgers,* No. cv 12-5054-GHK, 2013 U.S. Dist. LEXIS 138646
(C.D. Cal. 2013) ..................................................................................................... 14, 15
*Kreisler v. Second Ave. Diner Corp.,* No. 10 Civ 7592 (RJS), 2011 U.S. Dist. LEXIS
116666, (S.D.N.Y. 2011), *aff'd,* 731 F.3d 184 (2d Cir. 2013) ..................................... 8
*Levesque v. CVPH Med Ctr.*, No. 12-CV-960, 2015 U.S. Dist. LEXIS 46878 (N.D.N.Y.
2015), adopted at 2015 U.S. Dist. LEXIS 46796 (N.D.N.Y. 2015)...........................14
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...................................…...….8, 13
*Marakova v. United States*, 201 F.3d 113 (2d Cir. 2000)…………………………………8
*Moyer v. Walt Disney World Co.*, 146 F.Supp.2d 1249 (2000, M.D. Fla.)…………...…9
*Norkunas,* 444 Fed. Appx…………………………………………………………………12
*Panzica,* 2007 U.S. Dist. LEXIS 4217………………………………………………………17
*Pascuiti,* 1999 U.S. Dist. LEXIS 18736……………………………………………...…..18
*Roberts v. Royal Atlantic Corp.*, 542 F.3d 373 (2nd Cir., 2008)………………………16, 18
*Scheiner v. ACT Inc.,* No. 10-CV-0096 (RRM) (RER), 2013 U.S. Dist. LEXIS 25204
(E.D.N.Y. 2013)………………………………………………………………………….14
*Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000)……………………………....7

**Statutes**

28 CFR 26.402 .......................................................................................................... 17
28 CFR 36.304 .......................................................................................................... 17
42 U.S.C. § 12101 ....................................................................................................... 1
42 U.S.C. § 12182(b)(2)(A)(iv) ............................................................................... 17

**Other Authorities**

DiSiervi Decl. ................................................................................................... passim
Flauto-McCarthy Aff .......................................................................................... passim
Shalot Aff .................................................................................................... 19, 20

**Rules**

Fed. R. Civ. 56 .................................................................................................... 1, 7

# I.    **INTRODUCTION**

Defendant Tozzer, Ltd. d/b/a Niagara ("Niagara" or "Defendant"), by and through its counsel, Steven DiSiervi, Esq., submit this memorandum of law, together with the Declaration of Steven DiSiervi, Affidavit of Laura Flauto-McCarthy, Affidavit of Edward Shalat, R.A., and exhibits attached thereto, in support of its motion seeking summary judgment pursuant to Fed. R. Civ. 56.

Fredkiey Hurley ("Hurley" or "Plaintiff"), a serial claimant, has targeted various businesses with claims brought under Title III of the Americans with Disabilities Act ("ADA"). He has commenced over fifty (50) such lawsuits utilizing the same counsel and the same pleadings.   Hurley and his lawyer routinely escape scrutiny by resolving claims quickly, with little-to-no discovery.  To date, Hurley has been deposed just twice and his purported expert, Jay Egilmez, who did not attend college, has never been deposed.  In these hit-and-run litigations, Hurley and his lawyer file a complaint alleging every potential violation regardless of its relevance then quickly push for a settlement and an award of fees, with no real intent to remedy the alleged wrong.

This particular action brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"), which concerns "places of public accommodation" targets the operator of a historic bar located at 112 Avenue A, New York, New York.  The building was constructed prior to 1901 and the over the past thirty-eight (38) years the bar had different owners but remains unchanged.

By way of history, from 1980 to 1984, the bar that operated at this location was called A7 and was the start and unofficial headquarters of New York City hardcore music scene. On January 13, 1992, Defendant acquired the bar and renamed it "Niagara." Intent, however, on

retaining much of the history and energy of A7, Defendant has not in any way changed the bar or its layout since its acquisition.

In December, 2014 Hurley was a patron utilizing its services.   The only issue Plaintiff had with Niagara was the entranceway exterior steps.  However, Plaintiff's Complaint alleges that Niagara is inaccessible to wheelchair-bound individuals in four main respects:  (1) the front entrance is inaccessible due to existing steps and the lack of a ramp; (2) the bar's main countertop inaccessible to due to its height; (3) the pathway to the men's restroom is inaccessible due to existing steps and the lack of a ramp; and (4) the men's restroom is inaccessible.  Hurley  seeks injunctive relief in the form  of an order  requiring Defendant to alter Niagara to make it complaint with the ADA,  and, of course, seeks legal fees.

Niagara respectfully contends that Hurley lacks standing because he did not personally encounter or have knowledge of many of the alleged ADA violations, "tangible injury in fact". Hurley also lacks standing because he lacks the intent to return to Niagara in the future, no immediate threat of injury.  In response to Defendant's interrogatories, Hurley stated that prior to filing his Complaint he personally visited the premises once but was unable to gain entry due to architectural barriers at the front entrance.  But Hurley later testified that he did in fact gain access to Niagara and did purchase drinks. Hurley, via his expert, also claimed multiple barriers and lack of signage prevented him from using the men's restroom.  Hurley, however, testified that he did not attempt to use the men's restroom because he didn't want to wait on line.

Niagara also respectfully contends that Hurley fails to meet his initial burden of identifying a "readily achievable" method for removal of each alleged violation, the standard that applies to all buildings constructed before the effective date of Title III and which have not undergone alterations since January 23, 1992.  Hurley's proffered "expert report" is a bare-bones compilation of photographs of alleged barriers and citations to the ADA requirement.  It offers no options to

choose from, proposes no methods for achieving compliance, and provides absolutely zero feasibility analysis.

## II.     STATEMENT OF FACTS

While it is difficult to determine the exact age of the building located at 112 Avenue A, New York, New York, it was classified by the City of New York as an "old law tenement" or a C4 building, which means it was built before 1901. (Flauto-McCarthy Aff., para. 3)  The earliest photograph of the building on record is dated 1938, and demonstrates that the subject entrance on the corner of Avenue A and East 7th Street has remained unchanged to this day. (DiSiervi Decl., Ex. H).  112 Avenue A consists of a ground floor commercial space and six (6) apartments above the ground floor.  At no time did Defendant have an ownership interest in 112 Avenue A. (Flauto-McCarthy Aff., para. 3).

From 1980 to 1984, the ground floor of 112 Avenue A was occupied by a bar called A7, which was the first venue in the City of New York to feature live hardcore music. (Flauto-McCarthy Aff., para. 4).  Niagara occupies the same space as A7 and the entrance to A7 remains and is used by Niagara. (Flauto-McCarthy Aff., para. 9, 10).  Like other businesses in the area, the entrance to the bar is prefaced by two steps. (Shalat Aff., para. 16).  The entrance area was for service of patrons and contained a bar. (Shalat Aff., para. 19).  At the end of the bar there were, and remain, three (3) steps that lead to the bathrooms and a rear performance area. (Shalat Aff., para. 19).  During its operation, A7 would have live bands playing in the rear performance area. In October 2013, a plaque was hung in the rear performance area to mark its history. (Flauto-McCarthy Aff., para. 10).

On January 13, 1992, the bar located at 112 Avenue A was acquired by Defendant and was renamed "Niagara." (Flauto-McCarthy Aff., para. 6). The layout and use of the space has not been

changed in any manner.   (Flauto-McCarthy Aff., para. 13).  The entrance area contains the same bar A7 used and is still used to service patrons.   (Flauto-McCarthy Aff., para. 10).   Three steps still lead to the rear area where patrons congregate and listen to live music. Since Niagara acquired the space, there have not been any changes to its layout.   (Flauto-McCarthy Aff., para. 13).

Niagara had previously served wheelchair patrons.   (Flauto-McCarthy Aff., para. 18).   To this day, Niagara facilitates access for wheelchair patrons by maintaining a portable ramp and doorbell system at the entrance doors, with a sign containing the International Symbol of Access. (Flauto-McCarthy Aff., para. 19).   The sign instructs patrons to ring the bell for assistance, and agents of Niagara are trained to look out for and assist individuals seeking access into the bar.

Hurley testified that he visited in Niagara in December, 2014 for a drink.  (DiSiervi Decl., Ex. G, 9:8-9:18). He could not recall the doorbell system but he was able to gain access to Niagara with the help of another individual.  (DiSiervi Decl., Ex. G, 12:4-12:16).  Hurley also could not recall the width of the entrance but testified he was able to enter the bar while remaining in his wheelchair. (DiSiervi Decl., Ex. G, 12:17-12:24).  That night Hurley consumed two to three drinks and the height of the bar did not deter him purchasing or consuming his drinks.  (DiSiervi Decl., Ex. G, 29:10-29:13).   Other than the entrance steps, there were no architectural barriers that prevented him from moving freely. (DiSiervi Decl., Ex. G, 29:5-29:9).

After one hour at Niagara, Hurley had to use the restroom.  (DiSiervi Decl., Ex. G, 15:6-15:8).  He decided not to use the restroom at Niagara "because there was too many people in line so I left." (DiSiervi Decl., Ex. G, 15:12-15:19).  Because Hurley never attempted to access the men's restroom, he did not encounter or have actual knowledge concerning the alleged violations in the bathroom. (DiSiervi Decl., Ex. G, 27:5-27:9; 60:17-60:20).   Hurley has never returned to Niagara. (DiSiervi Decl., Ex. G, 15-25-16:17).  He had passed the bar on a few occasions but did

not have any intention of entering it.  (DiSiervi Decl., Ex. G, 16-18-16:21).  He remains uncertain as to whether he would ever return.  (DiSiervi Decl., Ex. G, 17:11-17:17).

Hurley has commenced approximately fifty (50) ADA actions. (DiSiervi Decl., Ex. G, 8:11-8:19).  He admits that most of the targets are based upon a single visit and that he does not return to the establishment he sued after the action has settled.  (DiSiervi Decl., Ex. G, 33:3-33:16, 33:21-34:14, 38:12-38:22, 40:5-40:8). He also admits he is generally unaware of the settlements his counsel enters into on his behalf.  (DiSiervi Decl., Ex. G, 66:7-66:16).

### III.   PROCEDURAL STATUS AND DISCOVERY

Hurley commenced this action on April 9, 2015, alleging that he suffers from spina bifida cystica, is permanently disabled, and is thus confined to a wheelchair. (DiSiervi Decl., Ex. A).  He also alleges that Defendant, as the operator of a bar, discriminated against him by failing to provide accessible facilities. (DiSiervi Decl., Ex. A).  On or about May 28, 2015, Defendant interposed an answer, which including the affirmative defense that Hurley lacked standing. (DiSiervi Decl., Ex. B).

Hurley served his Initial Disclosures on June 25, 2015, which included a report by "expert" Jay Egilmez, who allegedly performed a prelitigation inspection of the premises. (DiSiervi Decl., Ex. C.) The Initial Disclosure also referred to RGA Design Group as a potential expert with regard to the technical feasibility of any proposed modifications.  (DiSiervi Decl., Ex. C).  But to date, Hurley has not provided any expert disclosure from RGA Design Group or report regarding its opinions.

Moreover, Hurley's purported expert Jay Egilmez is neither an architect nor an engineer. (DiSiervi Decl., Ex. E).  He did not attend college and there is no indication that he graduated high

school. (DiSiervi Decl., Ex. E).  His stated experience is that he attended three (3) ADA courses, but even then, his *curriculum vitae* does not establish that he actually attended these courses before the commencement of this action.  (DiSiervi Decl., Ex. E).

According to the unsigned and undated report of Mr. Egilmez, not the knowledge or experience of Hurley, Niagara allegedly had fifteen (15) violations of the ADA in the following areas:

> (a) Inaccessible front entrance due to steps ("Violation 1");
> (b) No maneuvering clearance at front entrance ("Violation 2");
> (c) Lack of handrails at front steps ("Violation 3");
> (d) Dining surfaces, bar, are improper height ("Violation 4");
> (e) Steps prevent travel to restroom ("Violation 5");
> (f) Lack of handrails on interior steps ("Violation 6");
> (g) Lack of restroom signage ("Violation 7");
> (h) No maneuvering clearance in restroom ("Violation 8");
> (i) Restroom door width too narrow ("Violation 9");
> (j) Restroom door and sink handles are improper ("Violation 10");
> (k) Restroom door swings inward ("Violation 11");
> (l) Lack of insulation around Restroom pipe ("Violation 12");
> (m) Paper towel and toilet paper dispenser at improper height ("Violation 13");
> (n) Lack of grab bars in restroom ("Violation 14"); and
> (o) Water closet too narrow/improper position ("Violation 15")

None of Hurley's disclosures, including the unsigned and undated report of Mr. Egilmez, offer measurements, propose modification options, or provide any feasibility analysis. (DiSiervi Decl., Ex. D).

On October 12, 2015, Defendant disclosed Edward E. Shalat, R.A., a registered architect, as an expert.  Defendant's motion relies, in part, upon the expert opinion of Mr. Shalat.  (DiSiervi Decl., Ex. F).

Presently, all discovery, fact and expert, are closed.

## IV.   SUMMARY JUDGMENT STANDARDS

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that the party "is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor. *See Beyer v. Cnty. Of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *See also Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, the non-moving party has the burden of proof at trial, the movant may satisfy its initial burden on burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004). If the moving party carries its initial burden, the non-moving party must then demonstrate a genuine issue of material fact on a challenged element of its claim. *See Beard v. Banks*, 548 U.S. 521, 529 (2006). In doing so, the opposing party may not rest "merely on allegation of denials" of the factual assertions of the movant, not rely on its pleadings or on merely conclusory factual allegations. Fed R. Civ. P. 56(e); *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Rather, it must present specific evidence in support of its contention that there is a genuine dispute as to a material fact. *See Celotex*, 477 U.S. at 324.

## IV.   ARGUMENT

### A.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HE LACKS STANDING.

"[I]n view of a recognized trend of abusive ADA litigation, special diligence and vigilant examination of the standing requirement are necessary and appropriate to ensure that litigation serves the purposes for which the ADA was enacted." *See Harris v. Stonecrest Care Auto Center,* 472 F. Supp.2d 1208, 1215 (S.D. Cal. 2007). It is important to remember that the "proper analysis of standing focuses on whether the Plaintiff suffered an actual injury, not on whether a statute was violated." *See Doe v. Nat'l Bd. of Med.Examiners*, 199 F.3d 146, 153 (3d Cir. 1999). This is particularly true in matter, where the Plaintiff is a serial litigant.

It is well settled that Plaintiff has the burden of establishing standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *See also Marakova v. United States*, 201 F.3d 113 (2d Cir. 2000). At the summary judgment stage, the generalized allegations of standing permissible to survive a motion to dismiss are not adequate; rather, a plaintiff must "set forth specific facts, in affidavits or through other evidence, demonstrating that each element of standing is satisfied." *See Ctr. For Biological Diversity v.Lueck*, 417 F.3d 532, 537 (6th Cir. 2005).

Article III standing requires: "(1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) redressability of the injury by a favorable decision." *See Kreisler v. Second Ave. Diner Corp.,* No. 10 Civ. 7592 (RJS), 2011 U.S. Dist. LEXIS 116666, at *3 (S.D.N.Y., 2011), *aff'd,* 731 F.3d 184 (2d Cir. 2013).

To establish ADA standing, counsel for the plaintiff must show: (1) past injury to the plaintiff, (2) the allegedly discriminatory treatment will continue, and (3) plaintiff intends to return to the premises. *See Harty v. Greenwich Hosp. Group LLC,* 536 Fed.Appx. 154 (2d Cir.

2013). Based on his deposition testimony, Hurley cannot prove "injury or fact" or past injury because he did not encounter and does not have any knowledge of the interior architectural barriers and interior violations claimed.   Moreover, Plaintiff cannot establish a real or immediate threat of injury because he has no intention of returning to Niagara.   Finally, Hurley lacks standing as many of the alleged violations are moot. Accordingly, Defendant's motion for summary judgment should be granted.

### 1. Plaintiff Has Not Suffered an Injury-In-Fact As To Alleged Violations 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15.

To demonstrate injury-in-fact, Hurley must have "actual knowledge" of the alleged barriers to access before the Complaint is filed. *See Moyer v. Walt Disney World Co.*, 146 F.Supp.2d 1249, 1253 (2000, M.D. Fla.); *Hubbard v. 7-Eleven, Inc.*, 433 F.Supp.2d 1134, 1144 (S.D. Cal. 2006). "[T]here is nothing . . . indicating that a plaintiff can seek removal of barriers that he learns about through expert reports *after* filing the complaint." *Id.* at 1141-44 (holding that "Plaintiffs can only sue for barriers they encountered or had knowledge of prior to filing suit."). *See also Bernstein*, 2015 U.S. Dist. LEXIS 18810, at *26 ("[plaintiff] has failed to establish the injury in fact prong of standing by alleging either, injury caused to him personally by an actual ADA violation, or that [defendant's] noncompliance has deterred him from visiting the park").

Here, Hurley's deposition testimony irrefutably demonstrates that he did not sustain an injury-in-fact with respect to alleged Violations 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15. Hurley testified that the only violation he encountered and had "actual knowledge" of were the two steps leading to the front door entrance:

> Q.   Other than the steps leading into Niagara, were there any other barriers that prevented you from moving around freely or gaining access to any part of Niagara Bar?
>
> A.   No.

9

(DiSiervi Decl., Ex. G, 29:5-29:9).

> Q.    Could you tell me all of the problems you had with Niagara?
>
> A.    It was just the steps.  That's it.   I couldn't get to the bathroom, so I can't tell about what was in the bathroom.

(DiSiervi Decl., Ex. G, 60:17-60:22).

Plaintiff did not encounter or have "actual knowledge" of the alleged maneuverability violations with the front entrance, alleged Violation 2, because the plaintiff was able to maneuver through the entrance, after the steps, without any difficulty.  (DiSiervi Decl., Ex. G, 12:17-12:25).

Plaintiff did not encounter or have "actual knowledge" of the alleged handrail violations, alleged Violations 3 and 6, because he cannot walk and does not require handrails. (DiSiervi Decl., Ex. G, 19:7-19:17).

Plaintiff did not encounter or have "actual knowledge" of the alleged dining table violations, Violation 4, because the plaintiff he did not utilize any table.  (DiSiervi Decl., Ex. G, 26:8-26:13).

Plaintiff did not encounter or have "actual knowledge" regarding the alleged restroom violations, Violations 5, 7, 8, 9, 10, 11, 12, 13, 14 and 15, because he did not wish to wait on line for the restroom:

> Q.    Sir, was there a pathway for you to travel to the restroom at Niagara?
>
> A.    Yes.
>
> Q.    Do you know if there was any signage identifying where the men's room was?
>
> A.    Yes, have to be there.   All bars have that.

(DiSiervi Decl., Ex. G, 26:14-26:20).

> Q.     Did you try to ever try to enter the bathroom?
>
> A.     No.
>
> Q.     Why did you not try to enter the bathroom?
>
> A.     Because there was too many people in line so I left. That's
>        why I only stayed an hour.

(DiSiervi Decl., Ex. G, 15:15-15:19).

The evidence clearly shows that Hurley gained access to Niagara, was able to move around freely, and did by his own testimony did not encounter any barriers to access other than the front steps, alleged Violation 1. Indeed, Hurley is unaware to this day of the existence of the alleged barriers giving rise to alleged Violations 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15. It is evident this list of additional violations was driven by counsel and its purported expert. *See Bernstein,* 2015 U.S. Dist. LEXIS 18810, at *26 ("An encounter with an [ADA Accessibility Guidelines] defined barrier that a disabled person does not notice (or that does not affect the individual) is not a 'distinct and palpable' injury" for purposes of the standing inquiry.)

This matter is similar to *Bernstein* where the plaintiff failed to offer any evidence that he actually encountered the barriers listed in his expert's report, or was prevented from encountering those barriers. *Bernstein,* 2015 U.S. Dist. LEXIS 18810, at *22-23. In *Bernstein,* the plaintiff alleged that he encountered all of the ADA barriers listed in his expert's report but provided no evidence or allegations regarding "when or where he encountered these obstacles[.]" *Id.* at *22-23. Importantly, the court noted that plaintiff's expert failed to establish that he examined the identified barriers "because [plaintiff] encountered them during a visit." *Id.* at *23.

The *Bernstein* court found that plaintiff's blind reliance on his expert's report did not satisfy Article III's requirement of "concrete" and "particularized" harm. *Bernstein,* 2015 U.S.

Dist. LEXIS 18810, at *25 (recognizing that an expert's list of alleged barriers "cannot substitute for the factual allegations required to satisfy Article III's requirement of an injury-in-fact") (citations omitted).

In this matter, Mr. Egilmez's undated and unsigned report cannot substitute for the necessary showing that Hurley has standing as to each alleged barrier. Since Hurley never encountered, was not affected by, was not deterred by, and is still presently unaware of alleged Violations 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15, he lacks standing to bring these allegations and therefore summary judgment on these alleged violations is proper. *See Hubbard,* 433 F.Supp.2d at 1141-44; *Harris,* 389 F.Supp.2d at 1249; *Norkunas,* 444 Fed.Appx. at 415-16.

### 2. Plaintiff Cannot Show A Real And Immediate Threat Of Injury.

Plaintiffs seeking prospective injunctive relief must also show a "real and immediate threat" of injury." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again."); *See also Allen v. Wright*, 468 U.S. 737, 751 (1984) (Courts decline to exercise jurisdiction over litigants attempting to assert the rights of another where they claim generalized grievances).

When injunctive relief is sought in the context of ADA litigation an injury in fact requires more than "past exposure to illegal conduct." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). "The plaintiff must show a 'real and immediate threat of repeated injury" by demonstrating "a plausible intention or desire to return to the place but for the barriers to access." *See Access 4 All v. G&T Consulting Co.*, 2008 U.S. Dist. LEXIS 30594, at *11-12 (S.D.N.Y. 2008); *See also Access 4 All Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F.Supp.2d

12

160, 167 (S.D.N.Y. 2006). "[T]he failure to allege an intention or desire to return to the place where a plaintiff encountered an ADA violation or merely alleging an intention to return 'someday' merits dismissal." *Trump Int'l Hotel*, 458 F.Supp.2d at 168 (S.D.N.Y. 2006); *See also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 (1992) (intentions to return to the source of the illegal conduct "someday" . . . without any description of concrete plans, or indeed even any specification of when the "someday" will be do not support a finding of the "requisite actual or imminent injury.").

Here, Hurley's own deposition testimony established that there is no "real or immediate threat that [he] will be wronged again." *See City of Los Angeles v. Lyons*, 461 U.S. 95 at 111. More particularly, the deposition testimony shows that Hurley has no real intention of returning. He testified that he has resided at 189 Allen Street, Apartment 4H, New York, New York 10002 for approximately eighteen years. (DiSiervi Decl., Ex. G, 7:25-8:3). Niagara is approximately eight to twelve blocks from his residence. (DiSiervi Decl., Ex. G, 9:1-9:4). In the 18 years that Hurley resided at 189 Allen Street he has only attempted to enter Niagara once. Hurley recalled "passing" Niagara a second time in 2015 but had no intention of entering it. (DiSiervi Decl., Ex. G, 16:8-16:11). Most importantly, Hurley has no real concrete plans of returning to Niagara. (DiSiervi Decl., Ex. G, 17:11-17:17).

In short, Hurley has no factual predicate for standing to assert an ADA claim for injunctive relief. There is little in the record to indicate Hurley will ever return to Niagara. Furthermore, Niagara has previously served patrons in wheelchairs and it also maintains a portable ramp. There is simply no plausible basis to claim that discrimination occurred, much less that this treatment will continue. *See City of Los Angeles v. Lyons*, 461 U.S. 95 at 111.

Based on the foregoing, there is no evidence indicating an intent that Hurley will be returning to Niagara in the immediate future and therefore has failed to satisfy the injury-in-fact element to satisfy Article III standing.

### 3.   Alleged Violations 4, 7, 10, 12, 13 And 14 Are Moot.

A case or controversy must exist "not only at the time the complaint is filed, but through all stages of litigation." *See Already, LLC v. Nike, Inc.,* 133 S.Ct. 721, 726 (2013) (quotations and citations omitted). A case becomes moot and therefore no longer a 'Case' or 'Controversy' for purposes of Article III when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *See id.* (quotations and citations omitted). "Mootness is a jurisdictional defect and deprives a court of the authority to adjudicate a case." *See Scheiner v. ACT Inc.,* No. 10-CV-0096 (RRM) (RER), 2013 U.S. Dist. LEXIS 25204, at *7 (E.D.N.Y. 2013).

"[A] claim under the ADA can become moot if a defendant remedies the access barrier during the pendency of the litigation." *See Bacon,* 2015 U.S. Dist. LEXIS 35184, at *7 (ADA claim moot because defendant has remedied the alleged access barrier). *See also Levesque v. CVPH Med Ctr.,* No. 12-CV-960, 2015 U.S. Dist. LEXIS 46878, at *8-9 (N.D.N.Y. 2015), *adopted at* 2015 U.S. Dist. LEXIS 46796 (N.D.N.Y. 2015) (recommending dismissal of ADA claim because of "reasonable expectation that the alleged offense will not occur again, thereby rendering [plaintiff's] claim moot"). "If the challenged condition has been remedied by the defendant, a plaintiff has received everything to which he would have been entitled under the ADA, and the claim is usually moot." *See Kohler v. In- N-Out Burgers,* No. cv 12-5054-GHK, 2013 U.S. Dist. LEXIS 138646, at *21 (C.D. Cal. 2013).

To determine whether an ADA claim is moot, courts consider whether "(1) there is no

reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *See Bacon*, 2015 U.S. Dist. LEXIS 35184, at *8 (ADA claim moot where defendant remedied barrier by bolting sensors at proper distance; plaintiff s "speculative and conjectural" theory that defendant "may" revert to noncompliance did not prevent dismissal). *See Kohler*, 2013 U.S. Dist. LEXIS 138646, at *21-22.

Hurley's purported expert report states that he observed inaccessible dining tables and a bar, Violation 4. In fact, there are no tables in the bar area. (Flauto-McCarthy Aff., para. 21). Moreover, Niagara has purchased and provides upon request an ADA-compliant table. (Flauto-McCarthy Aff., para. 21). Thus, any alleged violation concerning inaccessible dining tables and a bar is moot.

Violation 7 pertains to Plaintiff's expert's claim that Niagara failed to provide proper restroom signage. In fact, there is signage. (Flauto-McCarthy Aff., para. 22). Moreover, Niagara has designated the larger, men's restroom for handicap usage and has a handicap sign on the men's restroom door. (Flauto-McCarthy Aff., para. 22). Thus, any alleged violation concerning restroom signage is moot.

Violation 10 alleges a non-complaint door knob and sink faucet knob in the men's restroom because those knobs require the twisting of the wrist. (Flauto-McCarthy Aff., para. 22). Notwithstanding the lack of credible evidence that the door knob and faucet knob prevented Hurley from using the men's restroom, Niagara has installed ADA-compliant knobs for the door and the faucet. (Flauto-McCarthy Aff., para. 22). Thus, any alleged violation concerning the knobs is moot.

Violation 12 alleges that pipes under the men's restroom sink fail to have ADA-required

insulation. Notwithstanding the lack of credible evidence that such condition prevented Hurley from using the restroom, Niagara has installed insulation over that pipe. (Flauto-McCarthy Aff., para. 22). Thus, any alleged violation concerning insulation of the pipe is moot.

Violation 13 alleges that the height of the paper towel dispenser in the men's restroom exceeds the maximum permitted height under the ADA. Notwithstanding that purported expert report fails to provide measurements establishing such a violation, Niagara has installed a hand air dryer at proper height. (Flauto-McCarthy Aff., para. 22). Thus, any alleged violation concerning the height of the paper towel dispenser is moot.

Violation 14 alleges that the men's restroom's water closet failed to include the required grab bars. Notwithstanding the lack of credible evidence that grab bars prevented Hurley from using the restroom, (Flauto-McCarthy Aff., para. 22). Niagara has installed compliant grab bars. (Flauto-McCarthy Aff., para. 22). Thus, any alleged violation concerning grab bars is moot.

Thus, even assuming Hurley has standing for the alleged violations he did not encounter or have "actual knowledge of", alleged Violations 4, 7, 10, 12, 13, and 14 are moot due to Niagara's voluntary remedial measures.

**B.** **PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HE HAS NOT MET HIS BURDEN ON THE READILY ACHIEVABLE STANDARD.**

Even assuming that Hurley has standing to bring claims for all the violations alleged in his Complaint and that his expert's report establishes the existence of such violations, Niagara is entitled to summary judgment because Hurley has failed to meet his initial burden of "articulating a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits," *Roberts*, 542 F.3d at 373 (quoting *Borkowski, v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)), for *any* of the alleged violations.

16

As set forth in the affidavit of Laura Flauto-McCarthy, Tozzer Ltd began leasing the subject space under the name Niagara on January 13, 1992. (Flauto-McCarthy Aff., para. 6).   The subject space has historical significance but more critically has remained unchanged since 1980.   (Flauto-McCarthy Aff.). Because this is an existing facility and no alterations were made in the last thirty-eight (38) years, the readily achievable standard applies as set forth in 42 U.S.C. § 12182(b)(2)(A)(iv); 28 CFR 36.304. *See also* 28 CFR 26.402 (addressing standards of compliance for alterations made to an existing facility before and after January 26, 1992).

"Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *See* 28 C.F.R. § 36.304(a). It is well settled that a plaintiff in a Title III ADA action "bears the initial burden of identifying both the existence of an architectural barrier and a method of removing that barrier that is 'readily achievable.'" *See Panzica,* 2007 U.S. Dist. LEXIS 42171, at *15 (citing *Royal Atlantic,* 445 F. Supp. 2d at 239). The plaintiff must also "proffer evidence, including expert testimony, as to the ease and inexpensiveness of the proposed method of barrier removal." *See id* at *12; *See also Panzica,* 2007 U.S. Dist. LEXIS 42171, at *15. Merely suggesting the removal of alleged barriers, absent any analysis of the requisite considerations or "the ease and inexpensiveness" of proposed renovations, does not satisfy this burden. *See Panzica,* 2007 U.S. Dist. LEXIS 42171, at *27-28; *See also Pascuiti,* 1999 U.S. Dist. LEXIS 18736, at *13 (merely "suggesting plausible accommodations" does not meet plaintiff's burden; *Gathright-Dietrich v. Atlanta Landmarks, Inc.,* 435 F. Supp. 2d 1217, 1227 (N.D. Ga. 2005) ("a conclusory statement that a recommendation to remove an ADA barrier can be easily accomplished without much difficulty or expense is insufficient for Plaintiffs to meet the burden of production on the issue of readily achievable.")

### 1. Plaintiff Does Not Identify Any Readily Achievable Method of Barrier Removal at the Entrance.

The only exchanged expert report from Plaintiff[1] merely states that the entrance to Niagara is inaccessible due to existing steps, Violation 1.  (DiSiervi Decl., Ex. D).  In addition, Mr. Eglimez opines that the entrance to Niagara lacks minimum maneuvering clearance, Violation 2. Fatally absent from Plaintiff's expert's report, however, are *any* proposed changes, let alone analysis plausibly demonstrating that a proposed change is readily achievable. *See Pascuiti,* 1999 U.S. Dist. LEXIS 18736, at *11-12.   Thus, Hurley has failed to meet his initial burden of production by articulating plausible methods of barrier removal that are "readily achievable."

Hurley's expert's report does provide ADAAG standards for required ramp dimensions and minimum maneuvering clearance.  But this is not a proposed method of barrier removal within the meaning of *Pascuitti* and other relevant case law.  Even assuming for the moment that the mere citation to ADAAG standards constitutes a proposal for barrier removal, there is nothing in Hurley's expert's report demonstrating that such proposals are "readily achievable."

Though it is not Niagara's burden as defendant in this Title III ADA action to prove there does not exist any readily achievable method of barrier removal for each of the alleged violations, Niagara's expert opines that an ADAAG ramp and minimum maneuvering clearance implied by Plaintiff's expert are not feasible. *See Roberts v. Royal Atlantic Corp.*, 542 F.3d 373, 378 (2nd Cir., 2008) (Once a plaintiff "articulates a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits," the burden shifts to the defendant to "prove that the proposals were not readily achievable.")

---

[1] For the purposes of this motion Niagara assumes that Mr. Egilmez is qualified to opine as to matters in his report, which—critically—does not include any suggested methods of barrier removal, let alone their cost or feasibility analysis. To the extent that Mr. Egilmez offers an affidavit or testimony with opinions in opposition to the instant motion, Niagara reserves its right to challenge his qualifications, methodology, and reasoning pursuant to Fed, R. Civ. P. 56(c)(4).

Edward Shalat, licensed architect, examined Niagara's entrance as it pertains to alleged Violations 1 and Violation 2. Mr. Shalat opined that the type of ramp required by the ADAAG is simply not feasible at Niagara's entrance because it would impede the ingress and egress to the sidewalk cellar doors on both sides of the building adjacent to the street. (Shalat Aff., para. 16). Moreover, the unobstructed use of the cellar doors are critical for the landlord and Niagara. (Flauto-McCarthy Aff., paras. 15-17).   Given that an ADAAG ramp is not feasibility, Mr. Shalat could not address the minimum maneuverability requirement, ordinarily provided by a flat landing area at the top of a ramp. (Shalat Aff., para. 17).

Although not proposed by Plaintiff, Niagara notes that it utilizes a temporary ramp and doorbell to assist wheelchair patrons to enter its facility.

### 2. Plaintiff Does Not Identify Any Readily Achievable Method of Barrier Removal at Bar Counter

Mr. Eglimez opines that the bar lacks the required five percent (5%) accessibility space, alleged Violation 4.  (DiSiervi Decl., Ex. D).  Again, absent from the expert's report are any proposed methods of barrier removal, let alone analysis plausibly demonstrating that removal is readily achievable.  Thus, Plaintiff has failed to meet its initial burden regarding alleged Violation 4.

At request of Niagara, Mr. Shalat examined the subject bar to determine whether there exists any readily achievable method of lowering five percent of the counter into ADA-compliant height range.  Mr. Shalat observe that there was no dead space under the bar that every portion of the counter houses essential equipment, drains, shelving, and plumbing components.  (Shalat Aff., para. 19).  Mr. Shalat opined that lowering five percent of the bar counter was not feasible. (Shalat Aff., para. 19).

Although not proposed by Plaintiff, Niagara notes that it offers wheelchair patrons an ADA-compliant table upon request.

### 3. Plaintiff Does Not Identify Any Readily Achievable Method of Barrier Removal at Interior Steps

Plaintiff's expert's report notes that existing steps leading to the men's restroom make the restroom inaccessible (Violation 5). (DiSiervi Decl., Ex. D). Absent from Plaintiff's expert's report, however, are *any* proposed changes, let alone analysis plausibly demonstrating that a proposed change is readily achievable. Thus, Plaintiff has failed to meet its burden by offering a method of barrier removal and a showing that it is "readily achievable." Again, Plaintiff's expert report does provide ADAAG standards for required ramp dimensions.

Mr. Shalat measured the interior steps that lead to the restrooms, which have an elevation of 22.5 inches. (Shalat Aff., para. 20). Under the ADAAG cited by Plaintiff's expert, a ramp would have to be 22.5 feet long, which would be approximately one third (1/3) of the entire interior space. (Shalat Aff., para. 20). Such a ramp would obstruct the bar, rendering it useless and create a significant safety issues. (Shalat Aff., para. 20). Thus, the ramp required by the ADAAG is not "readily achievable."

Although not proposed by Plaintiff, Niagara would note that it utilizes a temporary ramp to assist wheelchair patrons in access the restroom area.

### 4. Plaintiff Does Not Identify Any Readily Achievable Method of Barrier Removal in Men's Restroom

Plaintiff's expert's report notes various violations with the men's restroom, including lack of maneuvering clearance, narrow door width, inward door swing, and water closet position and clearance (alleged Violations 8, 9, 11 and 15). Plaintiff's expert's report, however, fails to provide any proposed changes for these violations, let alone articulate methods that are readily achievable.

Moreover, given the limited space in the restroom, proposed changes and analysis absolutely require opinion from an architect or engineer, which Plaintiff's expert is not. Thus, Plaintiff has failed to meet its burden by offering changes to the restroom and articulating how they are "readily achievable."

Mr. Shalat noted that the only way to create more floor space in the restroom would be to remove and relocate tiled walls, a project that would also require significant changes to the existing plumbing and electrical components. (Shalat Aff., paras. 22-26). Thus, changes to restroom complying with ADAAG are not "readily achievable." (Shalat Aff., paras. 22-26).

Although not proposed by Plaintiff, Niagara designated the larger of the two restrooms for handicap use and has taken voluntary remedial actions outlined above.

## CONCLUSION

The evidence reveals that Hurley has no injury in fact because he entered Niagara and did not encounter almost all of the alleged violations. Plaintiff was also not aware of any barriers at the time of his deposition nor does he have an intent to visit Niagara, and consequently cannot show that he sustained or is immediately in danger of sustaining some direct injury. Finally, most of the alleged violations are moot. As such Hurley has no standing to bring this action. Most importantly, Hurley has failed to meet his burden of proof that the removal of the barriers necessary to make Niagara compliant with the ADA are readily achievable.

For the above reasons, Defendants respectfully request this Court to grant their motion for summary judgment.

Dated: New York, New York
      June 30, 2017

                     Respectfully submitted,
                     ABRAMS, GORELICK, FRIEDMAN &
                     JACOBSON, LLP
                     Attorneys for Defendant

                     By: _____
                         Steven DiSiervi
                     One Battery Park Plaza – 4th Floor
                     New York, New York  10004
                     (212) 422-1200

TO:    ADA ACCESSIBILITY ASSOCIATES
        Attorneys for Plaintiff
        1076 Wolver Hollow Road
        Oyster Bay, New York  11771
        (516) 595-5009
        Attn: Tara Demetriades, Esq.