UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

FREDKIEY HURLEY, individually,                Index No.: 15-cv-2785 (GBD)(HBP)

        Plaintiff,

  -against-                                   **AFFIDAVIT IN SUPPORT
                                                        OF MOTION FOR SUMMARY**
TOZZER, LTD. d/b/a NIAGARA,                   **JUDGMENT**

        Defendant.
----------------------------------------------------------X

STATE OF NEW YORK  )
                             ):ss.
COUNTY OF NEW YORK )

      BEFORE ME, the undersigned authorized to take oaths, this day personally appeared EDWARD E. SHALAT, R.A., affiant, who first being duly sworn, deposes and says:

### INTRODUCTION

1.     At the request of the counsel for Defendant, I, Edward E. Shalat, R.A., have prepared the following affidavit in support of Defendant's motion for summary judgment.

2.     I was also asked to observe Defendant's premises located at 112 Avenue A, New York, New York 10009 ("Niagara"). During my June 14, 2017 observation, I undertook and recorded measurements of the components of Niagara that Plaintiff alleges do not meet the technical specifications published by the Department of Justice in the Americans with Disabilities Act Standards for Accessible Design (rev. Sep. 15, 2010) ("ADAAG").

3.     I was further asked to determine the feasibility of implementing Plaintiff's proposed options for remedying each alleged deficiency, from both a safety and technical stand-

1

point. This task was made difficult due to the fact that Plaintiff's report does not offer any remedial options (or analysis of option feasibility) for any of the alleged deficiencies at the premises.

4.  I was further asked to proactively recommend ways Plaintiff's alleged deficiencies can be either removed or altered so as to meet the applicable ADAAG regulations, and to determine the feasibility associated with implementing my own recommendations.

## EXPERIENCE, QUALIFICATIONS, AND EXPERTISE OF AFFIANT

5.  I am a licensed architect and have been involved with accessibility regulations and their evolution since the early 1980s. I have carefully studied and applied the Americans with Disabilities Act ("ADA") provisions and regulations.

6.  I am currently a partner of Shalat Architects, P.C., a firm that traces its roots to Bloch & Hess Architects, founded in 1916. I offer full Architectural Services, including: commercial, residential, institutional, and community design; master planning; site analysis and planning; ADA compliance; code review; cost estimating; construction contract administration; programming; and feasibility studies.

7.  I hold an active registered architect license with the States of New York and New Jersey and the Commonwealth of Pennsylvania.

8.  I received both a Bachelor's and Master's Degree in Fine Arts from the University of Pennsylvania.

9.  My qualifications are described in detail in my *curriculum vitae*, attached.

## PRIOR EXPERT TESTIMONY

10.  I have had no trial or deposition appearances in the past four years.

## STATEMENT OF COMPENSATION

11.  I have been retained by Defendant to act in the capacity of expert witness in this litigation. I am being compensated for the services I render in this case at an hourly rate of $285.

12.  My compensation is not based on the opinions formed or the outcome of this litigation.

## DATA OR OTHER INFORMATION CONSIDERED

13.  For my analysis, I relied on my general knowledge, education, and experience.

14.  In addition, I relied on the following materials:

    a.  Measurements taken and recorded by me at the site observation;

    b.  Photographs taken by me at the site observation;

    c.  U.S. Department of Justice, *ADA Standards for Accessible Designed* (revised as of September 15, 2010) and all prior versions as required;

    d.  The various documents filed with the Southern District Clerk of Court in this case, most notably the Complaint, pleadings, exhibits, and affidavits filed by the Plaintiff; and

    e.  The unauthored and undated report attached to Plaintiff's Initial Disclosure.

15.  In addition, I relied on my working knowledge of the subject premises. The building located at 112 Avenue A, New York, New York was built before 1901, in light of its designation by the City of New York an "Old Law Tenement". Old Law Tenements are multiple dwelling buildings constructed before 1901 and subject to the regulations of the Old Tenement House Acts of 1867 and 1879.

## ALLEGED ADA DEFICIENCIES

**Alleged Deficiencies at Front Entrance**

16. Inaccessible front entrance due to steps (Violation 1, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

   a. Niagara sits on the southeast corner of Avenue A (laid north-south) and East 7th Street (laid east-west). There are actually two entrance doors leading into Niagara, both at the corner of the building and both at 90 degree angles to each other, separated by a load-bearing column. Plaintiff's report does not make clear for which entrance door Plaintiff suggests a threshold ramp be installed. In any event, it is my opinion that installing a threshold ramp compliant with ADAAG 405 leading to either door is neither reasonable nor feasible.

   b. The entrance door facing Avenue A is led by two concrete steps, an existing condition created during the original construction of the building in the late 1800s, and has a high area of 12 inches from the public sidewalk. In light of this rise, and the required 1:12 slope ratio under ADAAG 405.2, a threshold ramp leading to the Avenue A door would have to run 12 feet. The critical issue with installing such a ramp leading to the Avenue A door is it would completely cover an existing sidewalk cellar door, beginning five feet from the Avenue A entrance, and which provides ingress and egress to the cellar of Niagara and also serves as an emergency exit in the event of a fire. A true and correct copy of a photograph of the Avenue A entrance, taken on the date of my site observation and depicting the entranceway and the barrier, is attached hereto and labeled "Avenue A".

4

    c. The entrance door facing East 7th Street is also led by two concrete steps, also an existing condition created during the original construction of the building. These steps have a high area of 15.5 inches, requiring a 15.5 foot long threshold ramp. The critical issue with installing such a ramp leading to the East 7th Street door is that the ramp landing at grade, required to be five feet in length, would obstruct the use of the existing sidewalk cellar door on East 7th Street, which provides the only means of egress and ingress to the building landlord's mechanical room. A true and correct copy of a photograph of the East 7th Street entrance, taken on the date of my site observation and depicting the entranceway and the barrier, is attached hereto and labeled "East 7th Street".

    d. To facilitate access to Niagara, Defendant maintains a portable ramp. Defendant also installed a buzzer at the entrance doors with a sign containing the ubiquitous International Symbol of Access, and which says "Ring Bell for Assistance." A true and correct copy of a photograph of the assistance sign and buzzer, taken on the date of my site observation and depicting the sign and buzzer, is attached hereto and labeled "Signage".

17. No maneuvering clearance at front entrance (Violation 2, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

    a. Plaintiff's report does not make clear which entrance door Plaintiff is referring to here. Nor does Plaintiff's report propose a specific modification to remedy this alleged deficiency. To the extent Plaintiff may be proposing that a flat landing area large enough to satisfy the maneuvering clearance requirements of ADAAG 404.2.4 be attached to the end of a threshold ramp leading to ei-

ther entrance door, see paragraph 16 of this affidavit for my feasibility analysis regarding installation of threshold ramps.

18. Lack of handrails at front entrance steps (Violation 3, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

   a. Plaintiff's report does not make clear which set of steps Plaintiff is referring to here. Nor does Plaintiff's report propose a specific modification to remedy this alleged deficiency. Moreover, for either set of steps, the horizontal bottom extension of an ADAAG 505-compliant handrail system would protrude into the circulation paths of a sidewalk and therefore may not garner the requisite approval of the New York City Department of Transportation.

**Alleged Deficiencies at Front Section**

19. Dining surfaces and bar countertop improper (Violation 4, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

   a. The floor of Niagara where all of Plaintiff's alleged interior deficiencies are located is separated into two sections, which are divided by three steps. The east (front) area is for service of patrons and contains a bar countertop. At the end of the bar are three steps that lead to male and female single-occupancy restrooms and the west (rear), performance area.

   b. The front area's bar countertop is 24 feet long and 42 inches tall. ADAAG 226.1 requires that at least five percent of dining surfaces comply with ADAAG 902, which in turn requires the tops of dining surfaces to be between 28 inches and 34 inches above the finished floor. Plaintiff's report does not recommend a specific portion of the counter be lowered; only that five percent

of the counter be lowered into ADAAG 902 range. In any event, it is my opinion that bringing any five percent portion of the counter into ADAAG 902 range is neither reasonable nor feasible due to the required plumbing and equipment located underneath the existing countertop on the bartender side of the bar.

c. To lower an approximately any section of countertop down to between 28 and 34 inches would necessarily require the removal or decommission of a triple-compartment sink tub, a drain board, a glass washer, a double icebox, or storage shelves. There is no dead-space on the bartender's side of the main section bar. Lowering the countertop would also require removal of two seats. A true and correct copy of a photograph of the bartender side of the bar, taken on the date of my site observation and depicting the plumbing and equipment located underneath the countertop, is attached hereto and labeled "Countertop".

**Alleged Deficiencies at Interior Steps**

20.  Steps prohibit travel to restrooms (Violation 5, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

a. The front section of Niagara leads to interior steps to the restroom area and the rear performance area. The steps have existed since before 1992 and have an elevation of 22.5 inches. To remedy this alleged deficiency, Plaintiff's report suggests that an interior ramp compliant with ADAAG 405 be installed. Given the layout of the front section of Niagara, it is my opinion that installing a threshold ramp compliant with ADAAG 405 leading to the restroom area neither reasonable nor feasible.

      b. In light of ADAAG 405.2's ramp slope restriction, the suggested ramp would have to be 22.5 feet long, approximately one-third (1/3) of the entire interior space. In addition, ADAAG 405.5 requires ramps to have a clear width of 36 inches, but there is only 53 inches of existing aisle space leading to the stairs. In short, such a ramp would render a good portion of the bar counter and the counter along the north wall completely inaccessible to patrons, impede the flow of patron traffic, could conflict with access issues of other persons with disabilities, including the blind and those requiring walking canes, and create a safety hazards at odds with other building code. A true and correct copy of a photograph of the aisle leading to the interior steps, taken on the date of my site observation and depicting the width of the aisle and the length of the suggested ramp, is attached hereto and labeled "Interior Steps Ramp".

21.     Handrails on interior steps (Violation 6, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

      a. It is not clear whether Plaintiff's report calls for ADAAG-compliant ramp handrails, or ADAAG-compliant stair handrails.

      b. To the extent Plaintiff is suggesting that handrails compliant with ADAAG 405.8 regulation be installed on a threshold ramp placed at the interior steps, see paragraph 20 of this affidavit for my feasibility analysis regarding installation of such a threshold ramp.

      c. To the extent Plaintiff may be proposing that handrails be provided on both sides of the interior steps pursuant to ADAAG 505.2, a true and correct copy of a photograph of the interior steps, taken on the date of my site observation

and depicting handrails on both sides of the steps, is attached hereto and labeled "Interior Steps Handrails".

**Alleged Deficiencies within Men's Restroom**

22. No maneuvering clearance in men's restroom (Violation 8, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

   a. Plaintiff's report does not propose specific modifications to remedy the alleged conditions relating to maneuverability and clear floor space in the men's restroom; only that minimum clearance must be provided pursuant to ADAAG sections 404.2.4 (door maneuvering clearance), 603 and 304 (floor turning space), and 606 and 305 (sink maneuvering clearance). In any event, it is my opinion that creating such clearance is neither reasonable nor feasible as it would block egress to the east portion of the space.

   b. The men's restroom is L-shaped and has approximately 35 square feet in open floor space. To create more floor would necessarily require the removal and relocation of tiled gypsum board partition, as well as significant changes to existing plumbing and electrical components.

23. Men's restroom door too narrow (Violation 9, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

   a. Plaintiff's report does not propose a specific modification to remedy this alleged deficiency; only that minimum door width shall be 32 inches in compliance with ADAAG 404.2.3 It is my opinion that creating such door width is neither reasonable nor feasible, given it would require the removal and reloca-

9

tion of tiled gypsum board partition, as well as significant changes to existing plumbing and electrical components.

24. Men's restroom door swings inward (Violation 11, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

   a. Plaintiff's report does not propose a specific modification to remedy this alleged deficiency; only that the door swings into fixture clear floor space in violation of ADAAG 603.2.3. It is my opinion that creating such floor space is neither reasonable nor feasible in light of the fact that it would require the removal and relocation of tiled gypsum board partition, as well as significant changes to existing plumbing and electrical components.

25. Water closet in men's restroom too narrow/improperly positioned (Violation 15, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment):

   a. Plaintiff's report does not propose a specific modification to remedy this alleged deficiency; only that the lack of clearance at the water closet of the men's restroom is in violation of ADAAG 604, which requires that the area around a water closet be 60 inches measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall, and ADAAG 604.2, which requires that the centerline of the water closet be 16 to 18 inches from the side wall. It is my opinion that complying with these requirements would be neither reasonable nor feasible in light of the fact that it would require the removal and relocation of tiled gypsum board partition, as well as significant changes to existing plumbing and electrical components.

26. I have not addressed Violations 7, 10, 12, 13, and 14, as referred to in Defendant's Memorandum of Law in support of its motion for summary judgment, because when I visited the premises on June 14, 2017 for my observation, I saw that these violations had been voluntarily remedied by Defendant.

(Signature page to follow)

_____
EDWARD E. SHALAT, R.A.

Sworn to before me this
29th day of June, 2017

_____
Notary Public

LUIS FABRICIO RUBIO
Notary Public - State of New York
NO. 01RU6284520
Qualified in Queens County
My Commission Expires Jun 17, 2017

Jun, 17 2021

12